UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| IN RE: | § | |
| | § | |
| LTHM HOUSTON - OPERATIONS, LLC | § | CASE NO. 14-33899 |
| d/b/a ST. ANTHONY'S HOSPITAL, | § | |
| | § | |
| DEBTOR | § | |

**TRUSTEE'S EMERGENCY MOTION FOR AUTHORITY TO OBTAIN
POST-PETITION FINANCING**

A hearing on this Motion will be held on <u>August 12, 2014, at 9:00 a.m.</u>
at 515 Rusk Ave., Courtroom 404, Houston, Texas 77002

Pursuant to Local Rule 9013:

**THIS MOTION SEEKS AN ORDER THAT MAY ADVERSELY AFFECT YOU. IF YOU OPPOSE THE MOTION, YOU SHOULD IMMEDIATELY CONTACT THE MOVING PARTY TO RESOLVE THE DISPUTE. IF YOU AND THE MOVING PARTY CANNOT AGREE, YOU MUST FILE A RESPONSE AND SEND A COPY TO THE MOVING PARTY. YOU MUST FILE AND SERVE YOUR RESPONSE WITHIN 21 DAYS OF THE DATE THIS WAS SERVED ON YOU. YOUR RESPONSE MUST STATE WHY THE MOTION SHOULD NOT BE GRANTED. IF YOU DO NOT FILE A TIMELY RESPONSE, THE RELIEF MAY BE GRANTED WITHOUT FURTHER NOTICE TO YOU. IF YOU OPPOSE THE MOTION AND HAVE NOT REACHED AN AGREEMENT, YOU MUST ATTEND THE HEARING. UNLESS THE PARTIES AGREE OTHERWISE, THE COURT MAY CONSIDER EVIDENCE AT THE HEARING AND MAY DECIDE THE MOTION AT HEARING.**

**REPRESENTED PARTIES SHOULD ACT THROUGH THEIR ATTORNEY.**

**EMERGENCY RELIEF HAS BEEN REQUESTED. IF THE COURT CONSIDERS THE MOTION ON AN EMERGENCY BASIS, THEN YOU WILL HAVE LESS THAN 21 DAYS TO ANSWER. IF YOU OBJECT TO THE REQUESTED RELIEF OR IF YOU BELIEVE THAT EMERGENCY CONSIDERATION IS NOT WARRANTED, YOU SHOULD FILE AN IMMEDIATE RESPONSE.**

TO THE HONORABLE MARVIN P. ISGUR, UNITED STATES BANKRUPTCY JUDGE:

Robert E. Ogle (the "Trustee"), Chapter 11 trustee for LTHM Houston – Operations, LLC d/b/a St. Anthony's Hospital (the "Debtor" or "St. Anthony's"), files this *Emergency Motion for Authority to Obtain Post-Petition Financing* (the "Motion"). In support of this Motion, the Trustee respectfully states as follows:

## I.
## CAUSE FOR EMERGENCY CONSIDERATION

1. On August 5, 2014, this Court held a hearing on the Trustee's *Emergency Motion to Cease Operations of Debtor's Hospital and to Implement Shut Down Plan* (the "Shut Down Motion"). At the hearing, at the prompting of counsel for the Debtor's principal, Jason LeDay ("LeDay"), the Court ordered the Trustee to negotiate with Opes Investments, Inc. ("Opes") regarding potential post-petition financing. On August 6, 2014, the Court held a continued hearing on the Shut Down Motion, at which the Trustee announced that an agreement in principle had been reached with Opes regarding the terms of post-petition financing to be provided to the Debtor. Counsel for the Trustee announced several material terms of the proposed loan on the record, and the principal of Opes confirmed the terms announced were true and correct. Opes further agreed to provide $13,000 to the Debtor in anticipation that the proposed financing would ultimately be approved, which the Court ordered would be subject to the terms announced on the record. At the conclusion of the August 6 hearing, the Court scheduled an expedited hearing to approve the proposed financing for August 12, 2014.

2. Emergency consideration is appropriate because the negotiations for the proposed financing sought to be approved herein began on August 5, 2014, and this Court has scheduled an expedited hearing to consider approval of such financing for August 12, 2014. Moreover, the Debtor is in desperate need of financing to fund its operations such that the proposed financing should be considered on an emergency basis.

## II.
## JURISDICTION AND VENUE

3. The Court has jurisdiction over this matter pursuant to 28 U.S.C. §§ 157 and 1334. This particular motion involves a core proceeding pursuant to 28 U.S.C. § 157(b)(2)(A) and (O). Venue is proper in this District pursuant to 28 U.S.C. §§ 1408 and 1409. This Court has constitutional authority to enter a final order regarding this Motion. Section 364 of the Bankruptcy Code have no equivalent under state law, thereby rendering the Supreme Court's opinion in *Stern v. Marshall* inapplicable. *See In re Carlew*, 469 B.R. 666, 672 (Bankr. S.D. Tex. 2012) (discussing *See Stern v. Marshall*, --- U.S. ---, 131 S.Ct. 2594, 180 L.Ed. 2d 475 (2011)). In the alternative, approval of post-petition financing is an essential bankruptcy matter, which triggers the "public rights" exception. *See Id.*

## III.
## RELEVANT BACKGROUND FACTS

4. On July 14, 2014 (the "Petition Date"), the Debtor filed a voluntary Chapter 11 petition in this Court. The Trustee was appointed on July 18, 2014.

5. The Debtor is a limited liability company organized under the laws of the State of Texas, with its principal place of business in Houston, Texas.

6. The Debtor operates St. Anthony's Hospital on Little York Road on the North side of Houston, Texas between Interstate Highway 45 and US Highway 59. St. Anthony's is a 39-bed acute care facility specializing in bariatric, cardiovascular, family practice, gynecology, orthopedics, and pain management with a full range of diagnostic capability including CT scans and x-ray.

7. The Debtor conducts all business related to the operation of the hospital and maintains all necessary licenses and accreditations from applicable Texas and federal bodies.

8.      On the Petition Date, the Debtor employed approximately 44 full-time and 30 part-time employees.

9.      The Internal Revenue Service ("IRS") asserts a pre-petition claim against the Debtor in the amount of approximately $680,000 for unpaid payroll taxes for the year 2013 secured by a lien and security interest in all property of the Debtor, including cash, proceeds and other cash equivalents that constitute cash collateral under § 363(a) of the Bankruptcy Code.[1] OPES Investments, Inc. ("OPES") asserts a claim in the amount of approximately $245,000 secured by the Debtor's receivables. The Federal Depository Insurance Corporation as receiver for First National Bank ("FDIC") asserts a claim in the amount of approximately $16 million secured by the Debtor's equipment and inventory.[2] The Texas Workforce Commission ("TWC") asserts a tax lien on all property of the Debtor securing approximately $30,000 owed pre-petition. US Foods, Inc. ("US Foods") asserts a claim in the amount of approximately $10,000 secured by certain goods, inventory, and equipment sold to the Debtor.  The Texas Health & Human Services Commission ("HHSC") does not have a lien on the Debtor's cash, though it has certain statutory rights of recoupment which impact the Debtor's ability to use its funds.

10.     Following a recent inspection by the Texas Department of State Health Services ("DSHS"), the Trustee learned that St. Anthony's was out of compliance with applicable rules and regulations in several respects, though DSHS confirmed that the cited problems do not present an immediate risk to patient health or safety.  That discovery as well as the lack of funds to make the August 1, 2014 payroll and to remedy the problems cited by DSHS led to the

---

[1] The IRS's lien was recorded during the 90-days prior to the Petition Date and may be avoidable. The amount of the IRS's secured claim as of August 7, 2014 was approximately $1.1 million.

[2] First National Bank released its lien on the Debtor's receivables on or about July 26, 2013. However, the FDIC has not yet taken a position with respect to the validity of the release or its impact on its security interest.  The FDIC also holds a security interest and an assignment of rents from the business entity that owns the Debtor's hospital

Trustee's filing of the Shut Down Motion. Since filing the Shut Down Motion, the Debtor has collected sufficient funds to make its August 1, 2014 payroll and to remedy many of the problems cited by DSHS. Moreover, the Trustee has negotiated the terms of post-petition financing with Opes that will allow the Debtor to continue operating until it can be determined whether the Debtor may be sold as a going concern or whether shut down and liquidation of St. Anthony's will be necessary.

## IV.
## RELIEF REQUESTED

11. The Trustee seeks an entry of an order authorizing the Trustee to obtain post-petition financing from Opes and to execute final loan documents that incorporate the following material terms and conditions (the "Facility"):

a. Facility Limit – $200,000.

b. Eligibility – The Debtor shall be entitled to draw upon the Facility based upon Eligible Accounts Receivable (which will include current and future Medicaid and Medicare receivables regardless of any freeze imposed) in amounts up to 85% of the Net Collectible Value of such eligible accounts not more than 150-days from service date. In addition, Opes will review unbilled accounts receivable for eligibility aged up to 30 days with advance of up to 85% of Net Collectible Value. The calculation of Net Collectible Value will be based upon the cash flow forecast attached hereto as **Exhibit A**.

c. Borrower – LTHM Houston - Operations, LLC

d. Use of Proceeds – Proceeds shall be used for working capital and/or general corporate purposes of the Borrower in accordance with the 13-week cash flow budget attached hereto as **Exhibit A** and/or in accordance with any Court-approved use of cash collateral.

e. Term – 13-weeks.

f. Interest – Interest will accrue at 6.5% plus the Base Rate per annum, but in no event to exceed the maximum allowed by applicable law. The Base Rate means, for any day, a rate per annum equal to the 1-year LIBOR rate.[3] The Base Rate shall be subject to a floor

---

facility. To the extent the FDIC exercises its assignment and/or forecloses upon the Debtor's hospital, the Debtor may be obligated to pay rent to the FDIC.

[3] As of the filing of this Motion, the 1-year LIBOR rate was 0.55%.

of 2%. Interest shall be calculated over a 360-day year and actual days elapsed, and paid monthly.

g. <u>Fees</u> – (a) Origination Fee of 2% of the total credit facility; (b) Unused Line Fee of 0.5% per annum of the unused portion of the line of credit, due and payable monthly in arrears; and (c) Collateral Monitoring Fee of $500 per month, due and payable monthly in arrears. All fees shall be paid out of the loan proceeds.

h. <u>Lockbox</u> – There will be no lockbox arrangement.

i. <u>Security</u> – Any amounts owed under the facility shall be secured by a junior lien on all assets of the Debtor except for any claims, recoveries, or causes of action arising under Chapter 5 of the Bankruptcy Code, including derivative claims to avoid and recover transfers under Section 544 and applicable state law, which lien shall be subordinate to all existing valid and perfected liens as of the date of closing, including but not limited to any replacement liens previously approved by the bankruptcy court. For avoidance of doubt, Opes's junior lien in connection with the credit facility shall be subordinate to the IRS's and the FDIC's respective liens on the Debtor's receivables and any other assets of the Debtor to the extent such parties each held existing valid and perfected liens on such receivables and other assets on the date of closing.

j. <u>Guarantee</u> – Jason LeDay ("LeDay") will guaranty the loan.

k. <u>Covenants</u> – The Facility will be subject to reasonable and customary financial covenants to be set forth fully in the final loan documents executed between the Trustee and Opes, and will include, among other things, a covenant for debt service coverage. The Debtor will be required to submit financial statements to Opes.

l. <u>Events of Default and Remedies</u> – The following will constitute events of default: (a) the amount of the Facility drawn in any applicable period exceeds 85% of the Net Collectible Value of Eligible Accounts Receivable, and such default is not cured within 30-days following the delivery of written notice of default by Opes; (b) the Debtor and/or Trustee seeks and obtains court approval for a sale of assets or confirmation of a plan that does not pay Opes the full, unpaid balance of the Facility at closing or upon the effective date of confirmation. Opes's remedy for an Event of Default is that the Debtor, LeDay, and the Trustee shall waive their respective rights to oppose a motion for relief from the automatic stay filed by Opes to foreclose upon its collateral. However, Opes acknowledges and understands that it must satisfy the Court in connection with such relief from the automatic stay that all federal and state laws are complied with in connection with the foreclosure of its collateral, including but not limited to any applicable HIPAA regulations. This section shall not prejudice any other party from opposing relief from the automatic stay requested by Opes. The parties acknowledge that conversion of the Debtor's Chapter 11 case to a case under Chapter 7 of the Bankruptcy Code shall not constitute an Event of Default.

m. Closing Conditions – (a) completion of a satisfactory field examination of the Borrower, the collateral, and the Borrower's books and records; and (b) confirmation of the creditworthiness and final credit approval of the Borrower and guarantors.

n. Facility Costs – All reasonable costs associated with the credit facility including but not limited to Opes's reasonable out of pocket costs and expenses associated with the transaction, professional fees, legal counsel, field examination, due diligence expenses, search and filing fees and similar expenses of Opes personnel in connection with Opes's due diligence. All facility costs will be paid from the loan proceeds.

o. Miscellaneous Provisions – (a) Opes agrees to a carve out from its security interest in the Debtor's receivables not to exceed $100,000 to pay any and all bankruptcy administrative expenses of the Borrower, including United States Trustee fees and any fees and expenses allowed by the Court under Section 503 of the Bankruptcy Code; (b) Borrower and Lender shall at all times comply with all applicable state and federal regulations including but not limited to the requirements of the Health Insurance Portability and Accountability Act (HIPAA); (c) Opes represents and warrants that no portion of the funds advanced by Opes in connection with the Facility were provided any insider or affiliate of the Debtor; (d) any disputes regarding the credit facility shall be subject to the exclusive jurisdiction of the bankruptcy court; and (e) the credit facility is contingent upon bankruptcy court approval.

12.     Section 364(c) of the Bankruptcy Code provides that:

(c) If the trustee is unable to obtain unsecured credit allowable under section 503 (b)(1) of this title as an administrative expense, the court, after notice and a hearing, may authorize the obtaining of credit or the incurring of debt—

> (1) with priority over any or all administrative expenses of the kind specified in section 503(b) or 507(b) of this title;

> (2) secured by a lien on property of the estate that is not otherwise subject to a lien; or

> (3) secured by a junior lien on property of the estate that is subject to a lien.

13.     The Trustee submits that, given the Debtor's capital structure and substantial secured and unsecured priority debt load, the Trustee would not be able to obtain post-petition financing on an unsecured basis. Accordingly, the Trustee believes that granting Opes a junior lien on the Debtor's assets is both necessary and appropriate under the circumstances.

14.     The Trustee proposes to repay the amounts due under the proposed Facility on a super-priority basis as set forth in § 364(c)(1) of the Bankruptcy Code, provided, however, that

any such super-priority claims of Opes shall be subject and subordinate to: (i) the payment of allowed professional fees and disbursements incurred by the professionals retained pursuant to § 327 or § 1103(a) of the Bankruptcy Code, and (ii) quarterly fees required to be paid pursuant to 28 U.S.C. § 1930(a)(6), and (iii) any fees payable to the Clerk of the Bankruptcy Court.

15. The proposed financing will not have any material adverse impact upon the Debtor's secured creditors, as the Trustee proposes to grant Opes a junior lien that is subordinate to such creditors' secured claims, including the IRS's and the FDIC's respective secured claim on receivables to the extent such claims are determined to be valid. The alternative to the financing proposed herein is immediate shut down and liquidation of St. Anthony's, as the Trustee does not have adequate funds to operate the Debtor's business.

WHEREFORE, the Trustee respectfully requests that the Court issue an order: (a) authorizing the Trustee to obtain post-petition financing on the terms and conditions set forth herein and to execute any documents as may be necessary or appropriate in connection therewith, (b) providing that, in the event that the Trustee and Opes fail to enter into a loan agreement mutually acceptable to the parties consummating the financing transaction proposed herein, any amounts advanced by Opes to the Debtor in anticipation of such transaction shall be subject to the terms, conditions, and treatment described herein; and (c) waiving the 14-day period provided under Bankruptcy Rule 4001(c)(2). The Trustee further requests such other and further relief as the Court may deem just and proper.

**[Signature Block on Following Page]**

Respectfully Submitted,

By: */s/ Spencer D. Solomon*_____
    Ronald J. Sommers
    Texas Bar No. 18842500
    rsommers@nathansommers.com
    Spencer D. Solomon
    Texas Bar No. 24066117
    ssolomon@nathansommers.com

Nathan Sommers Jacobs,
A Professional Corporation
2800 Post Oak Blvd. 61st Floor
Houston, TX 77056
(713) 960-0303 (main)
(713)892-4800 (fax)

**PROPOSED ATTORNEYS FOR
ROBERT E. OGLE, CHAPTER 11 TRUSTEE**

## CERTIFICATE OF SERVICE

The undersigned certifies that on August 11, 2014, a true and correct copy of the foregoing Motion was served electronically on all parties registered to receive electronic notice of filings in this case via this Court's ECF notification system, upon all parties listed on the attached Service List, and upon all parties below via email as follows:

**The Debtor**

Troy Tindal
(troy@tindallawfirm.com)
Tindal Law Firm

**U.S. Trustee**

Nancy L. Holley
(Nancy.Holley@usdoj.gov)
Trial Attorney

**Internal Revenue Service**

Nancy A. Leonard
(nancy.leonard@usdoj.gov)
Assistant United States Attorney
Southern District of Texas

**FDIC**

Joseph A. Friedman
(jfriedman@krcl.com)
Kane Russell Coleman & Logan, PC

**Opes Investments, Inc.**

Bradley R. Henderson
(bradley.r.henderson@gmail.com)
President, Opes Investments, Inc.

**HHSC & DSHS**

Hal Morris
(hal.morris@texasattorneygeneral.gov)
Assistant Attorney General & Managing Attorney
Bankruptcy Regulatory Section
Office of the Texas Attorney General

**CPA & TWC**

Rachel R. Obaldo
(Rachel.Obaldo@texasattorneygeneral.gov)
Assistant Attorney General & Managing Attorney
Bankruptcy & Collections Division
Office of the Texas Attorney General

    */s/ Spencer D. Solomon*_____
    Spencer D. Solomon

## CERTIFICATE OF ACCURACY

The undersigned certifies that the facts contained in the foregoing Motion are true and correct to the best of his knowledge.

    */s/ Spencer D. Solomon*_____
    Spencer D. Solomon