

IN THE UNITED STATES BANKRUPTCY COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

ENTERED
12/03/2014

| | |
|---|---|
| IN RE: § | |
| LTHM HOUSTON - OPERATIONS, LLC; § | CASE NO: 14-33899 |
| dba ST. ANTHONY'S HOSPITAL § | |
| Debtor(s) § | |
| § | CHAPTER 7 |

## MEMORANDUM OPINION

On July 25, 2014, Chapter 7 Trustee Robert Ogle filed an Application seeking to employ The Claro Group ("Claro") as his accountant, forensic accountant, financial adviser, and consultant. (ECF No. 24). On September 11, 2014, this Court held a hearing on the Application. At the hearing, the Court expressed concern about whether Claro is a "disinterested person" within the meaning of § 101(14) of the Bankruptcy Code.

Mr. Ogle identifies himself as a senior adviser at The Claro Group. He is provided with office space and a support staff by The Claro Group. His official mailing address as the Chapter 7 Trustee in this case is with The Claro Group. Although Mr. Ogle is not receiving a commission on the proposed employment, he normally receives a 75% commission on certain business he generates and an 8% commission on business generated by other Claro employees.

At the September 11, 2014 hearing, Mr. Ogle testified that Claro would primarily be providing financial consulting services.

The Court ultimately held that Claro is a "disinterested person" under § 101(14). (ECF No. 139). However, the Court expressed concern over the potential conflicts of interest related to Mr. Ogle's independent fiduciary duties to the estate. Specifically, the Court determined that "[t]he trustee's relationship with The Claro Group may cause a third party to question (i) whether the trustee's decision to employ Claro was influenced by his personal interests; and (ii) whether

the trustee will be able to fulfill his statutory duty to review and object to fee applications when appropriate." The Court held an additional hearing on November 13, 2014.

## Decision to Employ Claro

Mr. Ogle's testimony alleviated the Court's concern about whether his decision to employ Claro was influenced by his personal interests.

Mr. Ogle testified that his decision to employ Claro was based on the following information: (i) the estate needed a financial adviser with particularized experience in healthcare; (ii) that Claro was one of the few firms in the area that had such experience; (iii) such services were needed on an expedited basis, given the severe liquidity and cash flow problems facing the Debtor's business; (iv) given the risks of conversion and the lack of funds to pay the administrative claims of chapter 11 professionals, Claro was likely the only firm that would undertake the representation because of its relationship to the trustee; and (v) Mr. Ogle solicited proposals from five other firms with health care experience, each of whom rejected the engagement.

Moreover, Mr. Ogle testified that it would be much more efficient to hire Claro because he has a relationship with the personnel, trusts their methodology and judgment, and feels more comfortable giving them instruction. Accordingly, the Court is convinced that Mr. Ogle's decision to employ the Claro Group was made solely in furtherance of the estate's interests.

## Trustee's Ability to Fulfill His Statutory Duties

The November 13, 2014 hearing was Mr. Ogle's opportunity to demonstrate that he was sufficiently independent from the Claro Group. Yet, counsel for Mr. Ogle spent the first few minutes of the hearing making several statements that appeared to be solely for the benefit of the Claro Group. Counsel stated that Mr. Ogle's testimony and the brief that he filed were statements made by Mr. Ogle in his capacity as chapter 7 Trustee and not made on behalf of the Claro Group. Counsel also stated that (i) "I want to make sure that we're **not prejudicing any position that Claro may take in a subsequent case**;" and (ii) "[w]hile we conceded in our brief that the trustee is primarily seeking to retain Claro as a financial adviser in this case, we are also not intending to **prejudice the rights of Claro** or anyone else for that matter to take a position in other cases that the services provided would fall within the scope of accounting services." The only possible beneficiary of these comments is Claro.

Later in the hearing counsel explained that the Claro Group did not instruct him to make those statements and that he was not making them on behalf of Claro. Counsel claimed that he was making these statements for personal reasons not related to the interests of Mr. Ogle or the Claro Group. In a post-trial brief, counsel requested that his comments not be construed to prejudice the trustee in this case.[1]

An attorney's statement is generally imputed to the client. In *Link v. Wabash R. Co.*, the Supreme Court held:

> There is certainly no merit to the contention that dismissal of petitioner's claim because of his counsel's unexcused conduct imposes an unjust penalty on the client. Petitioner voluntarily chose this attorney as his representative in the action, and he cannot now avoid the consequences of the acts or omissions of this freely

---

[1] "The undersigned counsel respectfully requests that his comments at the outset of the hearing not be construed to prejudice the Trustee in this case. The undersigned has agreed not to bill the estate for his services in preparing this brief." (ECF No. 168 at 3).

selected agent. Any other notion would be wholly inconsistent with our system of representative litigation, in which each party is deemed bound by the acts of his lawyer-agent and is considered to have 'notice of all facts, notice of which can be charged upon the attorney.'

*Link v. Wabash R. Co.*, 370 U.S. 626, 633-34, 82 S. Ct. 1386, 1390, 8 L. Ed. 2d 734 (1962).

In the instant case, counsel's statements are particularly important for purposes of determining the issue before the Court. During a hearing scheduled for the purpose of determining whether the trustee is sufficiently independent from the Claro Group, the trustee's attorney began the hearing by advocating for Claro Group's interests in future cases. The Court accepts counsel's representation that neither Mr. Ogle nor Claro instructed him to make these statements. However, these comments suggest to the Court that counsel either (i) was confused about whose interests he represented or (ii) that counsel's interactions with Mr. Ogle or Claro lead him to believe that Claro's interests were primary significant concern. Either way, this undermines the argument that Mr. Ogle is sufficiently independent.

## Mr. Ogle's Post-Hearing Brief

Mr. Ogle makes two additional arguments in his post-hearing brief: (i) the Bankruptcy Code preempts state law with respect to employment applications by the trustee; and (ii) the trustee's relationship to Claro does not jeopardize his ability to act independently when reviewing Claro's fee applications. (ECF No. 168).

Mr. Ogle argues that "[t]he Bankruptcy Code and the Bankruptcy Rules create a simple three-part analysis, focused entirely on the proposed professional and its connections to the case: (1) Does the professional hold or represent an adverse interest to the estate? (2) Is the professional a "disinterested person" as defined by § 101(14)? (3) Has the trustee made the required disclosures under Bankruptcy Rule 2014(a)? If the answer to the first question is no, and the answer to the last two questions are yes, then the Court **may** approve the employment of the

professional." (ECF No. 168 at 6-7) (emphasis added). However, the word "may" implies that the Court has the discretion to deny the application even if the above three requirements are satisfied.

Some courts address concerns about the trustee's disinterestedness by applying the catch all portion of the definition of "disinterested" in § 101(14) to deny an application. For the reasons stated in the Court's October 24, 2014 Memorandum Opinion, concerns about the trustee's ability to fulfill his or her duties to the estate should be addressed through the discretion granted under section 327(a).

Mr. Ogle also argues that "the employment phase is not the appropriate time to scrutinize a trustee's ability to impartially review the fee applications of his or her professionals. That analysis should occur on a case by case basis when fee applications are submitted and is governed by different a section of the Bankruptcy Code." *See* 11 U.S.C. § 330." (ECF No. 168 at 10-11).

The Court disagrees. When Mr. Ogle was asked if he would have any hesitation objecting to a fee application submitted by the Claro Group that was improper, he responded: "I would object to them but I never have because I don't think that they would ever file a fee application that I didn't endorse." Mr. Ogle's response suggests that he has so much trust in Claro and its professionals that he doesn't think that he needs to review fee applications submitted by Claro with the same level of diligence that he would review fee applications submitted by other firms.

The Court is especially troubled by one portion of Mr. Ogle's post-trial brief. The brief alleges that Mr. Ogle has instructed his counsel to object to Claro's fee applications, where appropriate. Presumably, this statement in the post-trial brief means that Mr. Ogle's counsel

may act independently of Mr. Ogle with respect to such an objection. It is fundamental that a chapter 7 trustee's fiduciary duties are non-delegable.

Although § 1104(a) and § 704 contemplate that a Chapter 11 trustee may delegate certain duties to retained professionals, the trustee is required to retain authority over certain decisions. *See In re O-Jay Foods, inc.*, No. 3-89-281, 1991 WL 378164, at *17 (D. Minn. Nov. 21, 1991) ("Consistent with the trustee's administrative discretion, § 1104(a) and § 704 contemplate that a Chapter 11 trustee may delegate substantial responsibility for daily operations, so long as the trustee retains authority over the making of significant decisions for the business, and the exclusive authority over disposition of estate assets outside the ordinary course of business.").

A bankruptcy court in this district described what type of duties the trustee cannot delegate:

> There is one trustee "duty" that can never be delegated, and for which the trustee must always be held accountable—and for which trustees should justifiably be compensated, even if all actual work is being performed by others. The trustee and only the trustee is ultimately responsible for the administration of the estate, including most significantly the safeguarding and responsible disposition of estate assets and their distribution to creditors. We expect the trustee to make sure that all those persons to whom duties have been delegated do their jobs right—or else. The trustee cannot delegate the ultimate responsibility or the decision making that is part and parcel of her office. She is the one who decides who to hire and whether to hire. She alone decides how an estate asset is to be disposed of, albeit with input from an assistant. She alone must make sure that the estate is administered expeditiously.

*In re Guyana Dev. Corp.*, 201 B.R. 462, 476-77 (Bankr. S.D. Tex. 1996) (quoting *In re Abraham*, 163 B.R. 772, 779 (Bankr. W.D. Tex. 1994).

Section 704 provides that "(t)he trustee shall… if a purpose would be served, examine proofs of claims and object to the allowance of any claim that is improper." 11 U.S.C. § 704(a)(5). The trustee's duty to review and object to fee applications is integral to the safeguarding and responsible disposition of estate assets and is thus non delegable.

If Mr. Ogle has chosen to delegate his duties in order to avoid an appearance of a conflict, he has placed himself in an untenable position.

The Court believes Mr. Ogle to have the utmost integrity. However, the Court's high regard for Mr. Ogle should not affect the Court's independence analysis. *See In re Jackson*, 484 B.R. 141, 155 (Bankr. S.D. Tex. 2012) ("This standard is meant to prevent conflicts of interest without regard to the integrity of the person under consideration for employment. As a result, the experience and reputation of any proposed professionals are irrelevant under this requirement; if a conflict exists, the employment application must be denied.").

Applying this standard without regard to the integrity of Mr. Ogle is consistent with the purpose of § 327. *See In re Cyrus II P'ship*, 2008 WL 3003824 (Bankr. S.D. Tex. July 31, 2008) (internal citations omitted) ("Other reasons offered for the purpose of § 327 include **avoiding the appearance of a conflict of interest, a judicial check on the trustee's power,** to allow for the participation of lawyers while remedying the lack of debtor's incentive to negotiate attorney's fees for cost-effective counsel, to preserve the integrity of bankruptcy to protect debtors from overreaching by professionals, and to ensure loyalty to the bankruptcy client.") (emphasis added).

## Conclusion

Mr. Ogle's application to employ The Claro Group is denied.

SIGNED **December 2, 2014.**

                                                                          Marvin Isgur
                                    UNITED STATES BANKRUPTCY JUDGE